# H. L. JUDD & COMPANY, APPELLANT, *v.* NATHAN CUSHING, RESPONDENT.

*Evidence — a memorandum made by a party as to past transactions, not communicated to anybody, is inadmissible — liability of an owner attempting to repair the supports and foundations of a building in the occupation of his tenants — he is bound to use the highest degree of care — if the building falls the presumption is it fell because of the repairs — the owner is liable for loss by fire occasioned by the fall occurring in the building itself but not for damages caused thereby to an adjoining building.*

Upon the trial of an action, brought by the plaintiff, who occupied a portion of a building owned by the defendant, as his tenant, to recover damages occasioned by the negligence of defendant's agents which caused the building to fall and take fire, the referee admitted, against the plaintiff's objection and exception, a paper entitled "Partial History of Transactions with S. M. & A. Houghton," the defendant having testified that, to the best of his knowledge and belief, every transaction in dollars and cents, as between himself and Mr. S. M. Houghton, whose wife owned the property in question, which was managed by him, was entered in a book, and that he had made a written statement in regard to those transactions with the Houghtons, which was to form a part of that account which he had placed with it.

*Held,* that it was clearly error to admit this evidence

That it was a mere memorandum made by the defendant, it might be after this suit was brought, setting forth his view as to the transactions between Houghton and himself, and was a mere *ex parte* statement forming no part of any account or agreement.

That, if it were claimed that the memorandum was a denial of what might be deduced from the accounts, it could not be put in evidence as the denial was not communicated to anybody, was always within the defendant's own control, to be disclosed or not as his interest might require, and would be no more entitled to admission in evidence than would the mental resolutions of the witness which had never even found expression in words.

By the pleadings the defendant admitted that he was the owner of the premises in question, but alleged that he had no knowledge or information sufficient to form a belief as to whether, at the time of the accident, the plaintiff was a tenant in the building mentioned in the complaint, from him or otherwise.

*Held,* that, in view of the contention now made by the defendant that he was not in possession of the building, had no tenant therein, and never had any, the form of this denial was very significant, as it was consistent with the idea that his agent had done the letting, and he had no knowledge upon the subject, but was inconsistent with the idea that he had never had any tenants whatever in that building.

The plaintiff was a tenant of a portion of the upper part of the building which fell, and also of a part of an adjoining building which was set on fire from the building which fell. Abbott, the defendant's agent, while attempting to repair the lower floor of the building so as to suit the demands of a new tenant, interefred with

the supports of the building and, for some reason, which could not be definitely determined from the evidence, the building fell and the loss ensued.

*Held*, that if, while tenants were in the building, the defendant desired to make repairs which affected the supports and foundations of the building, he was bound to use the greatest degree of care, not mere ordinary care (because he was bound to use ordinary care towards persons to whom he owed no duty); and if, by his alterations, he endangered the safety of his tenants, he did it at his peril and could not shield himself from responsibility after a catastrophy had happened, by saying "I used ordinary care and employed skillful mechanics, but in spite of all, for some unknown reason, the building fell."

That the presumption in such a case would be that the building fell because of the repairs, and unless the landlord could show what the cause was, and that he was in no degree responsible for it, such presumption would prevail.

The defendant claimed that he was not liable for any loss arising from the destruction of property by fire because, as the fire spread from the building which fell into the adjoining building of the defendant in which this damage was caused, such damage was too remote.

*Held*, that, as the buildings in this case had separate and distinct walls of brick and stone, they were to be deemed separate and distinct buildings in the consideration of this question.

That the defendant was not liable for the damage which was caused by the burning of the adjoining buildings.

*Ryan* v. *New York Central Railroad Company* (35 N. Y., 210) followed.

That, for the loss occurring by fire in the building which fell, there seemed to be a clear liability if negligence was established.

APPEAL by the plaintiff from a judgment in favor of the defendant, entered upon the report of a referee, in the office of the clerk of the city and county of New York, on June 18, 1887.

The plaintiff is a domestic corporation, carrying on the business of manufacturing upholsterers' hardware and metal goods. It sued the defendant as the owner in fee of a building in the block bounded by Atlantic avenue, Columbia, State and Hicks streets, in the city of Brooklyn, of a portion of which it was lessee, for $107,036.82 damages (in excess of insurance), sustained by a fall of the building and by a fire which resulted, which the plaintiff claimed was caused by the wrongful and negligent act of the defendant. The fire extended to an adjoining building and there caused certain damage to the plaintiff's property.

The defendant denied that he had been guilty of negligence or wrongful conduct. He admitted that he was the owner in fee of the property. He denied information sufficient to form a belief whether the plaintiff "was a tenant in the building mentioned in

the complaint under a lease from the defendant or otherwise, or whether it was at that or any other time carrying on business therein as alleged in the complaint or otherwise."

The fall of the building occurred on May 5, 1885. It formed part of a large property let for manufacturing purposes, with the use of steam power, and known by the name of the Brooklyn Steam Power Works. The plaintiff was the lessee and occupant of the upper story of the building which fell. The other parts of that building, with some exceptions, were occupied by manufacturing establishments. They used steam power and fire. The fall of the building led to a general conflagration. The plaintiff was lessee and occupant of parts of other buildings which were consumed by the fire. Immediately prior to the fall, the building which fell was being repaired by and under the direction of one George L. Abbott. The plaintiff contended that Abbott was the representative of the defendant, and that, in consequence, the defendant was liable as owner and as landlord of the plaintiff. The defendant contended, and the referee found, that the premises were in the actual possession and control of .Abbott as tenant at will of the defendant; that in consequence the plaintiff was not a tenant of the defendant, and that the defendant did not make or control the repairs.

Upon the trial the referee, against the objection and exception of the plaintiff, admitted a paper entitled " Partial History of Transactions with S. M. & A. Houghton." The defendant testified as to this paper that he had, to the best of his knowledge and information, entered in a book kept by him, every transaction in dollars and cents, as between himself and Mr. Houghton, whose wife owned the property in question, which was managed by her husband, and that he had made out a written statement in regard to these transactions with the Houghtons, which was to form a part of the account, and which he had placed with that account. A similar case, arising from the falling of the same building, was brought in the second department, in which a judgment recovered by the plaintiff was affirmed by the General Term. (*Butler* v. *Cushing*, 46 Hun, 521.)

*John E. Parsons*, for the appellant.

*Albert Stickney*, for the respondent.

Van Brunt, P. J.:

This action was brought to recover damages from the defendant by the plaintiffs, who were tenants, because of the negligence of his agents which caused the building to fall and take fire.

The referee found in favor of the defendant upon all the main issues, viz., that there was no negligence; that the defendant was not in possession, and, consequently, not liable for negligence, if there was any; that the fall of the building was not caused by the yielding, giving away or breaking of its foundations or supports, and that the fire was not a natural and proximate result arising from the fall of the building. Although it is apparent that the judgment appealed from must be reversed because of error in the admission of evidence, in view of the numerous and intricate questions involved in the determination of the rights of the parties herein, lest by not considering them we may be deemed to have acquiesced in the conclusions of the referee, it seems to be necessary to briefly consider the other questions raised upon this appeal.

It was clearly error to admit the " Partial History of Transactions between the defendant and S. M. & A. Houghton." This was a mere memorandum made by the defendant; made at some time, it may be, after this suit was brought, setting forth his view as to the transactions between Houghton and himself, and was a mere *ex parte* statement forming no part of any account or agreement. If such a memorandum is admissible, then, in any case, any memorandum made by a party in his own favor, at any time, must be competent evidence. It is clear that this is not so. If it be claimed that the memorandum is a denial of what might be deduced from the accounts, it cannot be put in evidence even for that purpose, as the denial was not communicated to anybody, was always in the defendant's own control, to be disclosed or not as his interest might require, and would be no more entitled to admission in evidence than would the mental resolutions of the witness which had never even found expression in words.

We will now consider briefly the main issues involved. The question as to whether or not the defendant was liable, under any circumstances, naturally first suggests itself. By the pleadings the defendant admits that he was the owner of the premises in question, but alleges that he had no knowledge or information sufficient

to form a belief as to whether, at the time of the accident, the plaintiff was a tenant in the building mentioned in the complaint from him or otherwise. In view of the contention now made by the defendant that he was not in possession of the building, had no tenant therein, and never had any, the form of this denial is very significant. It is consistent with the idea that his agent had done the letting, and he had no knowledge upon the subject; but it is inconsistent with the idea that he had never had any tenants, whatever, in that building. If the latter had been the fact, he did have knowledge sufficient to form a belief upon the subject. He knew that the allegation was untrue, and he would have denied the allegation as broadly as he has other allegations in the complaint. The claim that the defendant was not in possession, but that Abbott was tenant at will and in possession, is inconsistent with the whole course of dealing of the parties. There is no pretense of any lease or rent reserved; no right of possession in Abbott for a single instant. Upon the contrary, the defendant could have taken actual possession at any moment, and did actually pay Abbott for his services, who paid over to the defendant the amounts received over and above expenses, rendering detailed accounts of receipts and expenses, showing tenants named and rent received from each, and disbursements made in caring for and maintaining the property. Under the evidence showing the relations between the defendant and Abbott, if the defendant had demanded possession and Abbott had insisted upon remaining in as tenant at will, demanding the statutory notice to quit, we do not think that any such claim could be upheld, but that the defendant would be adjudged in possession against Abbott, he having no right to possession except as the agent of the defendant. The whole of the transactions between the parties showed that Abbott was expected to, and did account to the defendant, as owner, for the moneys realized by letting the premises, less expenses, and the sums agreed to be paid to him for his services.

The next question presented is as to the liability of the defendant, because of the negligence of his servants. The referee has found that there was no negligence; and if this conclusion is borne out by the evidence, then no liability against the defendant, even if deemed in possession, has been established. The plaintiff was tenant of a

portion of the upper part of the building which fell, and Abbott attempted to repair the lower floor of the building so as to suit the demands of a new tenant. In doing so he interfered with the supports of the building, and for some reason which we cannot definitely determine from the evidence the building fell and loss ensued.

It is undoubtedly true that the foundation of this action is negligence, and that negligence must ordinarily be affirmatively shown or facts proven from which negligence may be legitimately inferred, and which are inconsistent with want of negligence, but the relations of the parties may be such that the happening of an accident imputes negligence until the contrary is shown. It is the familiar rule that where a passenger is seeking to recover from a railway company damages sustained by the happening of an accident to a train upon which he is traveling, after the accident is shown to have occurred, there is a presumption of negligence, as such results, in the ordinary course of events, are only caused by negligence, and the burden is upon the railway company to show, if it seeks to absolve itself, that the accident was occasioned by some cause which could not be foreseen or guarded against.

In the case at bar the plaintiff was a tenant of the defendant. It occupied the upper floor of the building and was entitled to undisturbed occupation thereof, and, although the defendant was not, perhaps, an insurer, yet he was bound to do nothing which could interfere with such occupation. If, with tenants in the building, the defendant desired to make repairs which affected the supports and foundations of the building, he was bound to use the greatest degree of care, not mere ordinary care, because he is bound to use this degree towards persons to whom he owes no duty, and if, by his alterations, he endangers the safety of his tenants he does so at his peril and cannot shield himself from responsibility, after a catastrophy has happened, by saying " I used ordinary care and employed skillful mechanics, but in spite of all, for some unknown reason, the building fell." The presumption in such a case would be that the building fell because of the repairs, and unless the landlord could show what the cause was, and that he was in no degree responsible for it, such presumption would remain. No such explanation is made out here and, consequently, the landlord is not excused.

We have examined the cases referred to by the learned counsel for respondent, but none of them present the question which is being considered. In none of them was the accident presumably caused by the direct interference with the supports of the building as in the case at bar, but the accident happened without any warning such as would put a prudent man upon his guard. There is a vast difference, it seems to us, in the rule which is to govern cases where the accident happened presumably through the active interference of the landlord and those cases where the accident happened from some cause, the existence of which a man of ordinary prudence would not have any reason to suspect. If a landlord assumes to meddle with the supports of an occupied building, he does so at his peril; and if an accident is caused thereby and his tenants are injured, to whom he owes the duty of leaving them in quiet possession, the least that can in justice be required is that he should show that he has exercised the highest degree of care, and that, notwithstanding such care, the accident has occurred.

It is claimed that whatever the liability of the defendant may be, he is not liable for any loss arising from the destruction of property by fire, because the damage was too remote. That the defendant is not liable for the damage which was caused by the burning of the adjoining buildings seems to be clear from principles laid down in the adjudicated cases. (*Ryan* v. *New York Cen. R. R. Co.*, 35 N. Y., 210.) In that case, and in this respect, it has not been overruled, it is laid down as the law of this State, that where a house takes fire through the negligence of the owner or his servant, and the flames extend to and destroy an adjacent building, that such owner is not liable for the damage sustained by the owner of the second building by such burning.

Applying this rule to the case at bar, although by the fall of the building upon which the repairs were being made its destruction by fire was to be anticipated because fires were used therein; that the fire should spread and consume other buildings was not a necessary or a usual result and depended upon many circumstances in the absence of any one of which this result would not have followed. We can see no distinction between the case of Ryan and the one at bar. The fact that the same person owns both buildings can in no way affect the question, as if the owner of the building in which the

fire originated would not be liable to the owner of the second building, neither would he be liable to the occupants of the second building, no matter whom its owner might be.

Although it is claimed that by subsequent decisions the Court of Appeals have overruled the Ryan case, yet in none of the cases were the facts the same, and the court expressly refrain from holding that the Ryan case is no longer authority. If the law in this State is different from that stated in the Ryan case, and if the occupant of a house is to be held liable for the destruction of adjacent buildings, when his servant has, by his carelessness, caused a fire in the house occupied by him, it is time that it should be known, as not one conflagration in ten occurs except through the negligence of somebody. The buildings in the case at bar had separate and distinct walls of brick and stone, and are to be deemed separate and distinct buildings in the consideration of this question, and we can see no ground of liability upon the part of the defendant for the loss arising in such a building. For the loss occurring by fire in the building itself, there seems to be a clear liability if negligence is established. As well might a railway company claim exemption from liability for damages arising from an accident, because, although it had injured its passengers by a collision occasioned by negligence, yet as the train had taken fire and the passengers had been burned up, no damages could be recovered, as the burning of the train was not the natural and proximate result ordinarily arising from railway accidents. We have failed to meet any case where even these corporations have had the temerity to advance such a plea.

The judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

DANIELS and BARTLETT, JJ., concurred.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.