MILO HINE, RESPONDENT, *v.* NATHAN CUSHING, APPELLANT.

*Liability of an owner of a building in making repairs thereto — liable for fires arising in the building and spreading to an adjoining building — cross-examination — hypothetical questions.*

In an action, brought to recover for a loss sustained by one Milo Hine by the burning of a building on the 5th day of May, 1885, the fifth story of which was occupied by him, against the owner of this and an adjoining building in which latter the fire originated, it appeared that the property was situated in the city of Brooklyn, and was devoted, through leases, to different kinds of manufacturing industry.   At the time the building was burned restorations and repairs in the building adjoining that occupied by the plaintiff were being made, under the direction and authority of Mr. Abbot, the defendant's agent, which consisted in part in the construction of a new pier to support one of the main girders of the building at its westerly end.

Upon the removal of the jack-screws, which had been placed at the ends of the girder to sustain the floor of the building, and immediately after the weight of the building was in this manner placed upon the pier, the evidence tended to

establish the fact that the floor above gave way and the other floors followed it. In the business carried on by different tenants in the building fires were used, and by the falling of the floors these fires were brought in contact with combustible material, setting fire not only to this building, but afterwards to the one occupied by the plaintiff, and thereby destroying the property, to recover for which the action was brought. Between the building occupied by the plaintiff and the one in which the fire originated a space was appropriated to the maintenance of an elevator, closets and stairway, and each building connected with this space by means of doors. The evidence tended to prove the fact that through this open space the means of passing from one building to the other was supplied. After the fire commenced it immediately burned its way through the space occupied by the elevator, closets and stairs, into the building in which the plaintiff carried on his business, and it progressed so rapidly as to render it impossible to remove from the fifth story of the building any of the plaintiff's machinery or other property which was there situated.

*Held,* that there was evidence supporting the conclusion of the referee that the fire was caused by the negligence of the defendant's agent.

*Webb* v. *Rome, Watertown and Ogdensburg Railroad Company* (49 N. Y., 420); *Milwaukee, etc., Railroad Company* v. *Kellogg* (94 U. S., 469); *Tanner* v. *New York Central, etc., Company* (108 N. Y., 623) followed; *Ryan* v. *New York Central Railroad Company* (35 id., 210); *Judd* v. *Cushing* (50 Hun, 181) distinguished.

That the plaintiff was entitled to recover for the loss of profits in his business, as that loss was reasonably well maintained by the evidence.

*Wakeman* v. *Wheeler* (101 N. Y., 205) followed.

Upon the trial Frank W. Miller, who applied the screws to raise the floor and support the building, was sworn on behalf of the defendant. His counsel, considering that the testimony of the witness was not as favorable to him as it should have been, called the latter's attention to what was stated to be his evidence given upon the trial of the Judd case. After this evidence was read to the witness he was asked whether he appeared and gave the testimony, and an objection taken by the plaintiff was sustained and the answer excluded.

*Held,* that as the defendant was not surprised by the testimony of this witness, and as he did not appear to have been a hostile witness, and as the questions were put upon the redirect-examination, after the witness, upon cross-examination, had admitted making an affidavit somewhat modifying his direct testimony, that the defendant could not, under such circumstances, under the guise of a cross-examination of his own witness, make direct testimony out of the previous declarations of the witness.

*Bullard* v. *Pearsall* (53 N. Y., 230) distinguished.

That the previous testimony of the witness was not admissible, nor could the witness be interrogated with regard to it, merely for the purpose of giving color and strength to the present direct testimony, there being no inconsistency between the latter and the former.

That the defendant was deprived of no legal right by the exclusion of these declarations. (DANIELS, J., dissenting.)

The referee also allowed an affidavit made by the witness Miller to be read to contradict his testimony ; portions of which affidavit, it was claimed by the defendant's counsel, had no relevancy to the answers sought to be contradicted.

*Held,* That the admission of the entire affidavit was unobjectionable, as the referee expressly limited its use to its proper function, namely, the showing of statements inconsistent with the witness' present testimony. (DANIELS, J., dissenting.)

The plaintiff's counsel was permitted, upon the cross-examination of a witness to interrogate him concerning the building laws, applicable only to buildings in the city of New York, and having no application whatever to premises which were situated in the city of Brooklyn, and after interrogating him upon this subject, the sections of the law were allowed to be read upon the trial.

*Held,* that this was immaterial and could not possibly be prejudicial to the defendant, and was also superfluous, as the laws of the State can be referred to without being put in evidence. (DANIELS, J., dissenting.)

Hypothetical questions in regard to the character of the work were put to one of the plaintiff's witnesses. One of these questions included a great variety of subjects, extending from folios 2560 to 2572 of the case, which was then changed and modified, and the witness was allowed, against the defendant's exception, to answer it.

*Held,* that a new trial should not be granted merely because the questions put to the witness were intricate and prolix, nor because of the manner in which this useless and harmless testimony was taken. (DANIELS, J., dissenting.)

APPEAL by the defendant from a judgment entered upon the report of a referee in the office of the clerk of the county of New York on the 30th day of April, 1888.

*Albert Stickney* and *Samuel H. Ordway*, for the appellant.

*John E. Parsons*, for the respondent.

DANIELS, J. :

The judgment was recovered for the loss sustained by the plaintiff in the burning of a building on the 5th of May, 1885, the fifth story of which was occupied by him. A controverted fact in the case was, whether the defendant was the owner of this and adjoining buildings, and in their possession at the time when the fire occurred. Evidence was given upon the trial from which these facts could be readily as well as reasonably inferred. In this evidence were statements and declarations of George L. Abbott, who had the superintendence and management of the buildings, asserting the fact of his agency. A part of this evidence, consisting in his admissions, may not strictly have been admissible as proof of the

agency, although it tended to establish the fact that his own understanding was that he was acting only in that capacity. It will not be necessary, critically, to consider the admissibility of all this character of evidence, for the reason that the admissible proof was such as to leave no substantial ground of controversy concerning the defendant's title and possession, and the fact that he was represented in the management and use of the property by Mr. Abbott as his agent. Proof of this description was considered in *Judd* v. *Cushing* (50 Hun, 181), and the conclusion was adopted, both that the defendant was the owner of the property, and was in its possession and management through Abbott, as his agent, at and before the time of the fire.

The property was situated in the city of Brooklyn, and it was devoted, through leasings, to different kinds of manufacturing industry. The motive power for the machinery employed was supplied by the defendant, and the occupants of the different parts of the buildings applied it to their own machinery by bands passing over the main lines of shafting propelled by the engine used and operated as a part of the defendant's property. Alterations and repairs in the building were made under the direction and authority of Mr. Abbott, the defendant's agent. They consisted in part in the construction of a new pier for the support of one of the main girders of the building near its westerly end. The old pier was found to be out of line. The new pier was built upon the same foundation, but instead of terminating under the girder the timber was cut in two, a portion of it was removed, and the pier carried up through it and through the story above. This work was commenced on Wednesday afternoon, the twenty-ninth of April. The pier was built on Thursday and finished by putting a capstone upon it on Saturday, To afford an opportunity for building the pier in this manner jack-screws were placed under the ends of the girder, which sustained the floor of the building, without the aid or assistance of the pier, and posts between that floor and the floor above sustained the upper parts of the building. The screws remained under the girder until Tuesday morning, the fifth day of May, when they were removed by the direction of this agent and the building allowed to settle upon the pier. Immediately after the weight was in this manner placed upon the pier which was larger than that previously maintained in the building,

the evidence tended to establish the fact to be that the floor above gave way and the others above it followed. In the business carried on by different tenants in the building fires were used and employed, and by the falling of the floors these fires were brought in contact with combustible material, setting fire not only to this building, but afterwards to the one occupied by the plaintiff, and thereby destroying the property in controversy.

It was strenuously objected on the trial before the referee, and the objection has been urged, in support of the appeal, that under the principle maintained by the case of *Ryan* v. *New York Central Railroad Company* (35 N. Y., 210), no liability attached to the defendant for the destruction of the plaintiff's property in this manner. He was a tenant in the occupancy of the building under the defendant. Between this building and that in which the fire originated a space was appropriated to the maintenance of the elevator, closets and stairways. And each building communicated with this space by means of doors. The evidence tended to prove the fact, and it was not, in this respect, seriously controverted, that through the open spaces, means of passing from one building to the other were supplied. The elevator was connected with each story of the building above the ground floor, and it communicated on the east with the building occupied by the plaintiff, and on the west with that in which the fire occurred. Both the stairs and the elevator seem to have been used for the joint convenience of each of these structures. And after the fire commenced it immediately burned its way through the space occupied by the elevator, closets and stairs, into the building in which the plaintiff carried on his business, and it progressed so rapidly as to preclude the possibility of removing from the fifth story of the building any of the plaintiff's machinery or other property, which was there situated. Whether the defendant, as the owner and landlord of these buildings, would be legally liable for a destruction of the property by fire in the building occupied by the plaintiff was not a point in controversy in *Judd* v. *Cushing* (*supra*). And what was said incidentally in the decision of the case, by way of reference to that point, is, of course, not controlling in this case. The facts, as they have now been presented for decision, justified the referee in finding as he did, that the proximate cause of the plaintiff's loss was the fire produced

through the alleged negligence of the defendant's agent, in the building in which the floors were shown to have given away. There was no intervening fact or circumstance, as there was in the case of *Ryan* v. *New York Central, etc.* (*supra*), by which the fire was carried from one building to the other. But it proceeded from the place where it commenced, by its own progressive ravages, into this connected building occupied by the plaintiff, and there caused the destruction of his property. The cause of this destruction was, therefore, the fire in the westerly building. Naturally and inevitably it burned its way through until the other building was reached and consumed. And when that is sustained by the evidence as the fact, the party by whose negligence the fire was in the first instance caused is the party producing the destruction of the property in controversy. This subject was further considered in *Webb* v. *Rome etc., Railroad Company*, (49 N. Y., 420), where the fire which was communicated by a locomotive upon the defendant's railway to a tie at the side of the track, proceeded from the tie to an accumulation of weeds and grass cut down by the side of the track. From thence it was conducted to a fence, and then upon the plaintiff's land, burning the trees and soil, and finally doing the damage complained of in the action. And the court held there that the defendant was liable for the loss in that manner produced. And in the course of the opinion, which seems to have received the approval of all the members of the court, it was said that "It certainly is not a novel proposition, that he who, by his negligence or misadventure, creates or suffers a fire upon his own premises, which, burning his property, spreads thence on to the immediately adjacent premises of another, and there destroys the property of the latter, is liable to him in an action for the damage which he has suffered." (Id. 425.) And it was further announced as the common law, " that he who negligently sets or negligently manages a fire in his own property is liable to his immediate neighbor for the damage caused to him by the spread of the fire on to his neighbor's next adjacent property." (Id. 426.) An effort was made in that case to relieve the defendant from liability under the statute of Anne, as it was afterwards amended, declaring that, "No action, suit or process whatever shall be had against any person in whose house, chamber stable, barn or other building, or on whose estate any fire shall  *  *  *

accidentally begin, nor shall any recompense be made by such person for any damage thereby." But, assuming this statute to have become a part of the common law, it was held by the court that it did not include or relieve the owner from liability for the destruction produced by a fire arising from its negligence. The principle was further considered in *Milwaukee, etc., Railway Company* v. *Kellogg* (94 U. S., 469), where the law wss declared and considered to be that " The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement." * * * " The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation ? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury ? It is admitted that the rule is difficult of application. But, it is generally held, that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." (Id., 474, 475.) And this case, by the evidence, has been brought within the direct application of the principle here enunciated. For no intervening cause whatever arose to change or accelerate the progress of the fire after it originated, but it progressed, by its own natural action and momentum, into the building occupied by the plaintiff, and there produced the destruction of this property. And for that, if the fire was caused by the negligence of the defendant's agent, he was liable for the loss. And the principle applied in this manner seems to have been followed in *Tanner* v. *New York Central, etc., Company* (108 N. Y., 623).

And that there was evidence supporting the conclusion of the referee that the fire was caused by the negligence of the defendant's agent abundantly appears from the case. This pier was a new and untried structure at the time when the weight of the floors of the building was let down upon it. As the evidence presented the case,

there was reason for believing that the pier gave way from this weight, and in that manner precipitated the fall of the floors. And the natural result or consequence of that fall was the firing of the building and the destruction of the adjacent structure occupied by the plaintiff. And were it not for other rulings arising in the course of the trial, there would seem to be no difficulty in the way of sustaining this recovery. For while it included the loss of profits, that loss was reasonably well maintained by the evidence. And when that may be the case, under the authority of *Wakeman* v. *Wheeler, etc., Company* (101 N. Y., 205), such profits may be allowed as a part of the damages.

The screws were applied to raise the floors and support the building while the pier was being constructed by Frank W. Miller, a witness produced and sworn on behalf of the defendant. · His counsel, considering that the testimony of this witness was not as favorable to him as it should have been, called his attention to what was stated to be his evidence given upon the trial of the Judd case. After this evidence was read to the witness he. was asked whether he remembered giving that testimony. This was objected to on the part of the plaintiff as irrelevant, incompetent and immaterial, and because it did not appear that it was claimed that the reading of the testimony accurately gave what the witness had sworn to in the other case. This objection was sustained and the answer was excluded, and to that ruling the defendant's counsel excepted.

There is no reason presented by the case for supposing that the evidence was in any respect inaccurately read to the witness. The questions and answers, on the contrary, indicate the probable accuracy of the reading. And it was relevant and competent for the defendant to draw the attention of the witness to his evidence upon the preceding trial by way of refreshing his recollection, as that was proposed to be done on this occasion, and then to ascertain from him whether his testimony, as it had been given before the referee, was strictly accurate in these respects or not. Similar inquiries were made of this witness as to other portions of his evidence, and he was not permitted to answer those inquiries, and to the rulings excluding such answers the defendant again excepted. Why these rulings have been made in the case is in one respect unaccountable, for similar questions were put to the witnesses Thomas Clark

and Edward Young, to which they were permitted to return their answers without objection. And that course should have been followed and the witness Miller allowed to answer the inquiries in this manner made of him concerning his testimony on the preceding trial; for in *Taggart* v. *Murray* (53 N. Y., 233) it was held by the court that the party in whose favor a witness may be sworn and examined on the trial has the legal right to interrogate the witness in this manner to revive and correct his recollection. The testimony of this witness bore directly upon the fact of the negligence of the defendant's agent in the conduct of these repairs or changes which were made in the building. And that fact was not so conclusively established by the other evidence as to render the exclusion of these answers harmless. By these rulings the defendant was deprived of a legal right to refresh the recollection of his witness, and in that manner, if it could be done, to obtain more favorable answers from him than those which he had given.

The plaintiff's counsel was also permitted, upon the cross-examination of the witness Robert F. Hatfield, to interrogate him concerning the building laws applicable only to buildings in the city of New York, and having no application whatever to the premises in controversy. And after interrogating him upon this subject the sections of the law were allowed to be read upon the trial. This was obviously improper, for these enactments could have nothing whatever to do with this controversy.

The referee also permitted an affidavit made by the witness Miller to be read to contradict his testimony. It was urged by the defendant's counsel that portions of the affidavit having no relevancy to the answers of the witness should be excluded. But that was overruled by the referee, and the entire affidavit was allowed to be read. This was improper, for what the plaintiff had the right to do, and all that he was entitled to use the affidavit for, was to contradict the statement made upon the inquiry put to the witness Miller. That part of it was admissible, but the residue should have been excluded.

Hypothetical questions of an intricate and prolix character were put to the plaintiff's witness Robert H. Robertson. One of these questions, including a great variety of subjects, extends from folio 2560 to 2572 of the case, and it was then in material respects changed and modified, and the witness was

allowed, against the defendant's exception, to answer this question. That should not have been done for the reason that the question itself was too intricate and prolix to secure any advantageous evidence in the case. Perhaps, in that respect, and from the answers given by the witness to the question and modifications of it, the evidence was both useless and harmless. But certainly it should not have been taken in this manner. The witness might, and he certainly did, give evidence concerning the condition of this pier which was of service to the plaintiff in the case. And as there was good reason for believing that the infirm condition of the pier was the cause of the falling of the building, the testimony elicited from the witness should have been directed to this subject. These errors in the admission of evidence cannot be disregarded, particularly those relating to the examination of the witness Miller. And on their account a further trial of this action will become necessary.

The judgment should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

BARRETT, J.:

I concur in the opinion of Mr. Justice DANIELS upon the general merits of this controversy. But I am unable to agree with him that the judgment must, nevertheless, be reversed because of errors in the admission and exclusion of testimony.

First, with regard to the witness Miller. The defendant was not surprised by the testimony of this witness, nor does he seem to have been a hostile witness. The excluded questions were not necessitated by anything which transpired upon the direct-examination. Upon that examination there was neither inconsistency nor want of recollection. The excluded questions were put upon the redirect, after the witness, upon cross-examination, had admitted making an affidavit somewhat modifying his direct testimony. The rule laid down in *Bullard* v. *Pearsall* (53 N. Y., 230), which is evidently the case referred to by Justice DANIELS, does not apply to such a situation. The defendant had a right, upon the redirect, to inquire into the circumstances attending the making of the affidavit. He could also ask the witness whether he still adhered unqualifiedly to his direct testimony. If he did, the defendant could not add to that adherence nor corroborate the witness by asking him whether he had not previously testified

(even more strongly) to the same effect. If, however, upon being confronted with the affidavit, the witness receded from the direct testimony, the defendant could probably refresh his recollection and bring him back to his original statement, by recalling the previous testimony. But where the witness was not asked whether he reaffirmed or receded from his direct testimony, the latter simply stood subject to the legitimate effect of the cross-examination. The defendant could not, under such circumstances and under the guise of a cross-examination of his own witness upon the affidavit, make direct testimony of the previous declarations.

It was not a complete lapse or change of memory with which the party here calling the witness had to contend, but merely the weakening of his direct testimony by cross-examination. That did not justify an inquiry into the witness' testimony in other cases. A party calling a witness, who is surprised by testimony contrary to his expectations, is permitted to interrogate the witness as to previous declarations inconsistent with the testimony, "for the purpose of probing his recollection, recalling to his mind the statements he has previously made, and drawing out an explanation of his apparent inconsistency." (Rapallo, J., in *Bullard* v. *Pearsall, supra.*) Here, however, there was no inconsistency between the testimony given and the previous declarations. The direct testimony was not, perhaps, quite so strong as the previous testimony, but it was substantially the same. At all events, the previous testimony was not admissible, nor could the witness be interrogated with regard to it, merely for the purpose of giving color and strength to the present direct testimony — there being no inconsistency between the latter and the former. The inconsistency, if any, was in *the affidavit* to which the witness' attention was called upon cross-examination. But the rule does not extend to such surprises of cross-examination, nor to declarations inconsistent with affidavits used to weaken perfectly consistent direct· testimony. My conclusion is that the defendant was deprived of no legal right by the exclusion of these declarations.

Second, as to the admission of the entire affidavit. This was unobjectionable, as the referee expressly limited its use to its proper function, namely, the showing of statements inconsistent with the

witness' present testimony. The referee then added: "The statements in the affidavit are not admissible as evidence for any other purpose." And when the defendant's counsel repeated his objection in another form, the referee again said: "I overrule the request on the ground that the whole of the affidavit must be admitted in evidence, but holding at the same time that the affidavit constitutes no proof of the facts in the portion of the affidavit which has been read."

Third, as to the admission, upon Hatfield's cross-examination, of the building law applicable to the city of New York. This was immaterial, and could not possibly have prejudiced the defendant· It was also superfluous, as the laws of the State can be referred to without being put in evidence.

Fourth, as to the hypothetical questions put to the witness Robertson. Justice DANIELS concedes that this evidence was both useless and harmless. For that very reason I cannot assent to the granting of a new trial merely because the questions put to this witness were intricate and prolix, nor because of the manner in which this useless and harmless testimony was taken.

In my judgment, substantial justice was done in this case, and whatever errors may have been committed in the course of a long and earnestly contested trial were trivial and unimportant. They were not, at all events, sufficiently grave to affect the result or to warrant the disturbance of the judgment.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J.:

I concur in the conclusion arrived at by Mr. Justice BARRETT, that the judgment in this case should be affirmed, with costs.

The case at bar differs from that of *Judd* v. *Cushing* in that, in the latter case, the buildings were separate and independent, having no connection, except a shaft running through the wall which supplied the power. In the case at bar the buildings were communicating, were used as a single building and having a common stairway and elevator, and thus devoid of all the elements of distinctness and separation which were so apparent in the case of *Judd* v. *Cushing.*

Judgment affirmed, with costs.