## CLAPP *vs.* WILSON.

A party to a suit may give in evidence, to impeach the credit of a witness of his adversary, a written or sworn statement of such witness, made on another occasion, contradicting his testimony then given, without calling the attention of the witness to it, otherwise than by giving it in evidence on the trial.

Written documents are not received in evidence by proving their authenticity on the trial. To be evidence in the cause they must be read, or the reading must be expressly or impliedly waived.

Documents not given in evidence while the testimony is being taken, may yet be read on the argument, at the discretion of the court or referees; but where such permission is given, explanatory evidence should be received from the opposite party, if necessary to prevent a surprise.

An offer by a party complaining of surprise, on a trial before referees, to give rebutting evidence, should be absolute, and not be made to depend upon a statement of the referees, as to the effect on their minds of the evidence to be answered.

Where the defendant examined his son-in-law as a witness in his behalf, and it was shown that he had made statements contradicting the facts sworn to by him on the trial; *held* that it was competent for the defendant to answer the imputation of bias on the part of the witness in his favor, to show that they were not on friendly terms.

ASSUMPSIT for work, labor and materials in erecting a dwelling house. Plea, non-assumpsit. The cause was tried before referees.

The evidence showed that the plaintiff erected a house in the year 1834, on a lot in the city of Albany, the title to which was in the defendant. The plaintiff gave evidence of the labor performed and materials furnished, and that the defendant was often present giving advice and directions concerning the business.

The defence was that the building was erected for one S. T. Carr, a son-in-law of the defendant, and upon his employment. Carr was examined as a witness in his behalf. He testified that the defendant, having agreed to give the lot to the witness' wife, first raised $1200 by a mortgage upon it, and afterwards conveyed it to trustees for her benefit, and that the witness received the amount raised on the mortgage to expend in the erection of the building; that he, the witness, employed

the defendant, and was to pay him the $1200 before mentioned, and that the plaintiff was to trust him individually for the balance, which was then supposed to be about $300, it being estimated that the whole would cost about $1500.

After this testimony had been given the defendant produced a deposition of this witness, taken before a master in chancery, upon his examination as a defendant in a creditor's bill, and inquired of the witness whether the name subscribed to it was his signature, and he admitted that it was. It does not appear that the paper was read during the trial; but on the summing up by counsel, which took place several days after the testimony had closed, the plaintiff's counsel commenced reading the deposition with a view to discredit the testimony of Carr. The defendant's counsel objected to this, on the ground that the paper had not been read prior to closing the testimony, and that it was not regularly in evidence, and also that the attention of the witness had not been called to it. The referees overruled the objection and the paper was read. In it the witness Carr stated that in employing the plaintiff to build the house, he acted as the agent of the defendant. After the paper had been read, the defendant's counsel stated that it was a surprise upon him, and that he desired, should its contents affect the minds of the referees unfavorably towards the testimony which Carr had given, that he might be permitted to call and examine that witness on the subject. It was admitted that he was then residing about thirty miles from Albany, where the argument was had. The referees did not make any order upon the subject.

In the course of the trial the defendant's counsel offered to prove that the witness Carr and the defendant were not on friendly terms, and had not been for some time past. The plaintiff's counsel objected and the referees rejected the evidence. Carr having stated in his testimony that the defendant had said he could build the house for $1500, which was less than the amount claimed by the plaintiff on the trial, the defendant to sustain the credibility of Carr offered to show that a contract could have been made at the time the house was built, for the

smaller sum spoken of by Carr in his testimony. This was objected to by the plaintiff and the referees sustained the objection and excluded the evidence. The referees reported in favor of the plaintiff; and the defendant moved to set aside the report.

*R. W. Peckham*, for the defendant. 1. The referees erred in allowing the deposition of the witness Carr to be read. It was not properly in evidence and the attention of the witness had not been called to it. (1 *Phil. Ev.* 296.) 2. They should have permitted a further examination of Carr to enable him to explain it. 3. They erred in excluding the offer to show that Carr and the defendant were not on friendly terms. 4. They should have received the evidence which the defendant offered to show at what price a contract could have been made to build the house.

*H. Harris*, for the plaintiff.

*By the Court*, WHITTLESEY, J. It was competent for the plaintiff to give in evidence the deposition of Carr before the master, for the purpose of impeaching him or impairing confidence in his testimony. To do this the deposition should be proved; and it was well enough proved by showing it to the witness and obtaining his admission that the signature to it was genuine. This proof would enable the plaintiff's counsel to read it whenever it was proper for him to make it evidence on his part, and the whole of it would then be evidence. (1 *Phil. Ev.* 296; *The Queen's case*, 2 *Brod. & Bing*. 286.) But proof of its authenticity and marking it as an exhibit by the referees, did not make it evidence in the cause. The marking it was for the mere purpose of identity. The proof of the paper was to enable the party to read it in evidence; but still it was competent for the defendant to object to its being read in evidence when the plaintiff should offer to read it. The paper itself is not evidence in the cause until after being proved, it has been read, or deemed or admitted to have been read. Until

then the court, the jury and the defendant must be assumed to be ignorant of its contents. It is not quite clear from the state-ment of facts in this case, whether this examination was read or assumed to be read in evidence before the testimony was closed. The statement of the evidence in the first place merely speaks of the proof of the paper. In another place, when speak-ing of papers not read in evidence, it excepts this deposition, referring perhaps to what occurred on the summing up by counsel, as to what took place in relation to reading this paper in evidence at that time. Upon looking to the place so referred to we find this paper spoken of as having been *given in evi-dence as aforesaid*, and the objection is by the other side that it had not been read. The paper should not be spoken of as having been given in evidence unless something more had been done with it than merely proving it; and when taking this and all the preceding statements with the objection that it had not been read, we are perhaps authorized to infer that it was proved and deemed to be in evidence without being actually read before the testimony closed. If this is so it is well enough, as it is not necessary that it should be actually read to be in evidence, if by assent of the other party it was deemed to be in evidence. This being a sworn statement in writing, it was not necessary to call the attention of the witness in the first in-stance to the statements in it, which were intended to be relied on, with a view to explanation. This is only necessary when naked contradictory statements are referred to for the purpose of impairing confidence in the witness. (1 *Phil. Ev.* 293, 296.)

But if this examination had not been actually read or deemed to have been read in evidence before the testimony was closed, it was in the power of the referees, at their discretion, to permit it to be read in evidence even after counsel had commenced their argument. (*Alexander* v. *Byron,* 2 *John. Cas.* 318; *Mercer* v. *Sayre,* 7 *John.* 306; *Leggett* v. *Boyd.* 3 *Wend.* 376.)

It does not, indeed, appear that the deposition was admitted as evidence, after the testimony was closed, to cure an omission to read it previously, but it may possibly have been so. If this were so, and the defendant had shown that he was surprised

Clapp v. Wilson.

by the admission of such evidence after the witness had gone home, and made a case showing the necessity of the presence of his witness to explain the evidence thus unexpectedly introduced, the new evidence should not have been admitted without giving time for recalling the witness. The request of the defendant did not, however, reach the point in this respect. He asked to have the witness recalled if such new evidence, in the estimation of the referees, should affect their opinion of Carr's evidence. It was for the defendant to determine what influence such new evidence was likely to have upon the minds of the referees, and to request unconditionally to have the witness recalled if thought necessary, and not make it depend upon the influence which such evidence might in point of fact have upon the referees. Upon the whole I think this ground of impeaching the report of the referees, and for setting it aside, cannot be maintained.

It is, however, quite evident that the referees reported in favor of the plaintiff because they discredited Carr, as they cou.u hardly have reported in his favor on any other grounds. This being the case, and it being a fact in the cause that Carr was the defendant's son-in-law, I think they should have permitted the defendant to show that he and the witness had been for some time at variance. When attempts had been made to discredit the witness, and show a bias in the defendant's favor, the defendant ought to have the benefit of any bias of feeling the other way, as calculated in some degree also to affect his testimony.

So I think, under the circumstances of this case, the referees erroneously rejected the evidence offered to show what the house could have been contracted to be built for at the time it was built.

This suit, it is true, was to recover what the labor and materials were worth, and testimony would not be competent to show what it could be contracted for to affect the amount of the recovery. But this testimony was offered for the purpose of sustaining Carr, who had been discredited because he had contradicted himself on other occasions, and it was proper to

receive evidence to sustain him on other points to go with the account in deciding upon the question of credit.

For the reasons last stated, I think the report of the referees should be set aside.

Report set aside.