By the Court:
Monell, J.
The questions of fact in this case were so eminently proper for the decision of a jury, and the evidence was of so conflicting a character, that the case may be dismissed, so far as the facts are concerned, with the single remark that the verdict cannot be disturbed.
It is claimed, however, that error was committed on the trial, in the exclusion of evidence offered on the part of the plaintiff.
The irreconcilable contradiction in the evidence left it solely a question of the credibility of witnesses, and the evidence excluded by the court was intended to impeach two of the defendants’ witnesses, by showing, that upon an examination de bene esse, they had testified differently from the testimony they gave at the trial.
*88 I have no difficulty in disposing of the exception to the exclusion of the several questions propounded to the witnessesHewell and Jenkins, which were designed to lay a foundation for reading their depositions.
They had each been examined and cross-examined on the trial, when the plaintiff had an opportunity, and could, without interfering with the "orderly conduct of the trial, have propounded to them each and all of the questions which were subsequently excluded. They were allowed to leave the stand without being interrogated, and after the defendants had rested, were called back by the plaintiff to again testify.
It was clearly within the discretion of the judge whether he would allow it or not. It was not in any sense rebutting evidence which was offered. Rebutting evidence is such as contradicts, modifies, explains, or varies the evidence of the other party. The depositions were intended, it is true, to impeach the veracity of the witnesses, by showing contradictory statements made by them on another occasion. Such statements might have tended to modify, explain, or even vary the evidence of those witnesses, and therefore proper as impeaching their veracity; but they were not evidence to modify or vary the case made by the defense. They might weaken the evidence, and induce the jury to discredit the testimony of the witnesses, but nothing more.
It was proper for the plaintiff to disprove any material facts which the defendants had proved, and that would have been rebutting evidence. But for the purpose of laying a foundation to impeach a witness, it is the duty of the impeaching party to interrogate him, that is, call his attention to the subject; and that must be done upon his cross-examination, and it cannot afterward be done except by the permission of the court in the exercise of its discretion. The rule, which requires an examination in chief to exhaust a witness, is equally applicable to a cross-examination. All these matters are under the direction and control of the presiding judge, and his discretion cannot be reviewed (Shephard v. Potter, 4 Hill, 202; Leland v. Bennett, 5 id., 286).
*89 There was no error, therefore, in not allowing the witnesses to be re-examined.
The exclusion of the deposition of Newell presents a different and more difficult question.
The offer was to read in evidence the testimony of the witness, taken de bens esse, for the purpose of showing that he made statements therein inconsistent with his testimony given in court. The objection was, that a proper foundation had not been laid for reading the deposition. The witness had said, on his cross-examination, that he had been sworn before as a witness in the case ; that the signature shown him was his, and that the deposition was read over to him before he signed it.
The paper, which the plaintiff’s counsel offered to read, has not been printed in the case, but, I think, it sufficiently appears to have been the same deposition which the witness had said he had signed and sworn to. No other deposition was spoken of by any witness, and to hold that it was not sufficiently identified, would be a refinement to which I cannot consent, and an objection altogether too technical to be entertained for a moment. Beside, the deposition was not excluded on any such ground. It is evident that the reason for overruling the offer was, that the attention of the witness, when under examination, had not been directed to the parts of the deposition which it was proposed to read; for, upon the depositions being excluded by the court, upon the objection that a proper foundatio n had not been laid, an attempt was made to overcome the objection, by recalling the witness, but whose further testimony was then excluded by the court, in the exercise of its discretion. The general rule, in this mode of impeachment is, while the witness is on the stand, to call his attention to the time and place, when and where, and the person to- whom, the alleged inconsistent declarations were made. This rule, so far as it relates to oral declarations made out of court, has, I believe, no exception, and I have never known it to be claimed as a right, to call back a witness for the purpose of laying a foundation for his impeachment.
It is claimed by the appellant, however, that the rule is dif *90 ferent in respect to written declarations or statements, and especially so, when such declarations or statements are made under oath, and are contained in an affidavit or deposition of the witness, made on another occasion.
The general rule is that the contents of a written paper are to be proved by the paper itself, and by that alone, if the paper be in existence. Having sufficiently proved and identified it, the whole paper becomes evidence, and may be read by either party. But the court must be in possession of the whole, as it may happen that the whole, if produced, may have an effect different from that which might be produced by a statement of part.
The rule as laid down by Hr. Phillips, in regard to written statements of a witness (1 Phil. Ev., 297), is thus stated. When the writing is produced, the cross-examining counsel may ask the witness if he wrote it; if he admits writing it) rite counsel cannot inquire of the witness whether or not such statements are in the paper; the paper itself must be read to show whether it contains such statements.
The case mostly relied on by the appellant’s counsel is certainly strongly in point (Clapp v. Wilson, 5 Denio, 285). The defendant produced a deposition of the witness and inquired of him whether the name subscribed to it was his signature, and he admitted that it was. That was held sufficient proof to allow the deposition to be read, for the purpose of contradicting the witness. The court says (p. 288), “ This being a sworn statement in writing, it was not necessary to call the attention of the witness in the first instance to the statements in it, which were intended to be relied on, with a view to explanation. This is only necessary when naked contradictory statements are referred to, for the purpose of impairing confidence in the witness.”
But that case has been, in effect, overruled by the Court of Appeals in one if not more cases. There is certainly no sufficient reason for a different rule in the two kinds of impeaching evidence. There is quite as much propriety in directing the attention of a witness to his sworn or written statements, for the purpose of allowing him to explain, as there is in regard to state *91 ments orally made. The writing, it is true, is the best evidence, and must of com-se be read; but it is just as important that the witness should have an opportunity to state why or under what circumstances he made it, as it is when the declarations were verbal. In one case a witness was allowed to show that a deposition, which varied from his testimony, was written in a language with which he was imperfectly acquainted (Lemoine v. Ganton, 2 E. D. Smith, 343).
In the case of Hubbard v. Briggs (31 N. Y. R., 518), the testimony of a deceased witness, given on a former trial, was read in evidence. Subsequently, it was offered to read a deposition of the witness in a chancery suit, for the purpose of contradicting his evidence, as read, and impeaching him. The testimony was objected to on the ground that the attention of the witness had not been called to the subject, and the objection was sustained. The court say this was not error (p. 537). “ Had the witness been living, and on the stand, it would not have been competent, by way of impeachment, to show that he made different and contradictory statements on other occasions, without first calling his attention to them. Without this, there is no foundation laid for the evidence. It cannot change the rule because the witness is dead, and the parties have stipulated that his evidence might be read as he gave it on a former trial.”
In Stephens v. The People (19 N. Y. R., 549), a deposition of a witness, made before a coroner, was introduced to impeach his credibility, and it was allowed, as there was no objection, that the attention of the witness had not been previously called to the portions of the evidence which were selected for that purpose / and the admission of the evidence was sustained on that ground.
And again, in Newcomb v. Griswold (24 N. Y. R., 298), a witness, on cross-examination, was asked whether he had ever made oath before a master in chancery, etc., which was objected to on the ground that the affidavit was the best evidence, and the objection was sustained. The court say the deposition was in writing, and should have been produced. “A witness is not bound to answer as to matter reduced to writing by himself or another, *92 and subscribed by him, until after the writing has been produced and read or shown to him” This case does not meet the precise point, except inferentially. It does hold, however, that the paper must be read or shown to the witness. His attention would thus be called to the subject-matter, and he would have an opportunity of making such explanations as he might be able, which, according to the case of Hubbard v. Briggs (supra), must always be done.
Upon authority, then, there was no error in excluding the deposition of the witness Newell. He had not been examined in respect to it, further than to prove his signature. It had not been read to him, nor was he in any manner apprised of the purpose for which it was proved, or the use it was intended to make of it. He had, therefore, no opportunity to enter into explanations, or correct mistakes, if there were any. If the rule which requires, as a preliminary to impeachment, that the attention of the witness shall be called to the subject, means any thing, and is designed to protect the witness from surprise or misunderstanding, then enough was not done in this case to make the evidence admissible. At least, the parts of the deposition claimed to be contradictions of his evidence on the stand should have been read or pointed out to him.
The objection, that a proper foundation had not been laid, was, therefore, well taken.
In respect to the deposition of the witness Jenkins, the reasons for its rejection are still stronger. The deposition was not proved at all. It had not been shown to him, nor was his signature to it proved.
There is certainly á conflict between the case of Clapp v. Wilson (supra), and the cases in the Court of Appeals to which I have referred. But we are bound by and must follow the latter.
As the other exceptions, taken on the trial, were not alluded to on the argument, and are not noticed in the appellant’s points, we will deem them abandoned, and shall not consider them.
The judgment and order should be affirmed.