HENRY T. ROMERTZE, Appellant, *v.* THE EAST RIVER
NATIONAL BANK, Respondent.

Where a party proposes to impeach a witness by proving inconsistent writ-
ten statements, it is sufficient to show the witness, or read to him, the
paper, and, if its genuineness is admitted, the party can introduce it
when he has the case and the right to put in evidence; and it is not the
legal right of the other party or the witness to enter into any explanation
of the contents of the paper until after it has been introduced in evidence.
It is within the discretion of the court, however, to vary the order of
proof.

(Argued May 23, 1872; decided June 4, 1872.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, affirming a judgment in favor
of plaintiff entered upon a verdict, and affirming an order
denying a motion for a new trial.

The action was brought to recover the value of twelve
United States bonds of $1,000 each, deposited by plaintiff
with defendant about May 12, 1865. The answer admitted the
deposit, but alleged a return thereof to plaintiff. The facts
pertinent to the questions decided sufficiently appear in the
opinion.

*E. W. Stoughton* for the appellant. The deposition of the
witness, Newell, was improperly excluded. (2 Phillips' Ev.,
962–965; 2 Brod. & Bing., 286; 8 Wend., 598; 24 N. Y.
R., 301; 5 Denio, 285.)

*William Fullerton* for the respondent. The court will
not review the testimony to see whether, as a question of
fact, the verdict was correct. (*East River Bank* v. *Kennedy*,
4 Keyes, 279; *Ostrander* v. *Fellows*, 30 N. Y., 350; *Wiltsie*
v. *Eaddie*, 4 Abb. Pr. [N. S.], 393; *Booth* v. *Bierce*, 38 N.
Y., 463, reversing 40 Barb., 114; *Van Blarcom* v. *Broadway
Bank*, 5 Trans. App., 132; *Westerlo* v. *De Witt*, 36 N. Y.,
340.) The deposition of the witness Newell was properly
excluded. (*Lemoine* v. *Ganton*, 2 E. D. Smith, 343; *Hub-*

*bard* v. *Briggs*, 31 N. Y., 518 ; *Stephens* v. *The People*, 19 id., 549 ; *Newcombe* v. *Griswold*, 24 id., 298.)

Church, Ch. J. There is no legal ground of complaint as to the disposition which the jury made of the case upon the evidence submitted. The evidence was conflicting as to the main fact in controversy, and the decision of the jury, if no legal error has been committed, is final between the parties. The result was largely dependent upon the credibility of the witnesses for the respective parties, some of whom were attempted to be impeached and others contradicted. The only question of law which seems to deserve attention relates to the attempt to prove that the witness Newell, called by the defendant, had made statements on another occasion inconsistent with those testified to by him on the trial. His evidence had been taken *de bene esse* in the same action, and, on cross-examination, the deposition was shown to him, and he stated that he signed it, and that it was read over to him before he signed it.

After the defendant rested, the plaintiff's counsel proposed to read the deposition, "for the purpose of showing that he made statements therein inconsistent with his testimony given on the stand in court on this trial." The court excluded it, on the ground, as we must presume, from the objection, and what took place subsequently, that a proper foundation had not been laid for the purpose of reading the deposition to contradict the witness. We think the court erred in rejecting the deposition. The paper was shown to the witness; he verified the signature and stated that it was read over to him before he signed it. It is to be presumed that he understood it. What more should have been done ? It was not competent to repeat particular sentences and ask if he testified to them, because the paper was the best evidence of what it contained. It was not incumbent upon the plaintiff's counsel to ask for explanations, nor to introduce the paper in evidence at that time. If he desired to ask the witness questions with reference to it, the court might, in its

discretion, permit its introduction at that time, but the regular course was to wait until his turn came to put in evidence, and this he did.

It is said that the letter should have been introduced in evidence at the time, so that the witness might either explain, his evidence or the statements contained in the paper. Without determining whether the court might, in its discretion, permit that course, the orderly way was to withhold the paper until the party had the right to produce evidence on his part. It was his evidence, and strictly he had no right to produce it until the other party rested, and he took the case. The witness could then be recalled and make any explanation he might have. Neither his rights nor that of the party would have been interfered with by this course. In the case of oral declarations out of court, the contradicting witnesses are never called until the party proposing to introduce them has the right to produce evidence on his part, and the explanations of the witness sought to be impeached are usually given after that, although the court may sometimes vary the order of evidence as a matter of discretion. The rule is substantially the same in both cases, except as it is necessarily varied by the nature of the impeaching evidence. As to oral declarations, the attention of the witness must be called to the time and place and particular language used, in order that he may recall the circumstances and make an intelligent answer, but, as to written statements, this is unnecessary, when the witness is shown the paper itself, and admits that he wrote or signed it and knows its contents. The rule indicated preserves the orderly course of the trial, and does no injustice to the witness or either party, and such I understand to be the rule sanctioned by authority. In 2 Greenleaf on Ev., § 463, it is said that if the witness "admits the letter to be his writing, he cannot be asked whether statements, such as the counsel may suggest, are contained in it, but the whole letter must be read as the only competent evidence of that fact. According to the ordinary rule of proceeding in such cases, the letter is to be read as the evidence of the cross-

examining counsel in his turn, when he shall have opened the case."

The same rule is laid down in 2 Phillips on Ev., 807.

In *Clapp* v. *Wilson* (5 Denio, 288), the court said : " This being a sworn statement in writing, it was not necessary to call the attention of the witness in the first instance to the statements in it, which were intended to be relied on with a view to explanation. This is only necessary when naked contradictory statements are referred to for the purpose of impairing the confidence in the witness." In that case the paper had been shown to the witness and the signature admitted, and it was objected on the argument that it had not been read in evidence on the trial. The court assumed that it had ; and held that it was unnecessary to call the attention of the witness, in the first instance, to particular passages contained in it for the purpose of explanation, and we think, held correctly ; although from the language used, without reference to the facts, it might be inferred that it was unnecessary to call the attention of the witness to the paper at all. The learned judge who delivered the opinion of the court below claims that these authorities have been overruled, and the rule changed by this court. With great respect, I cannot agree with him. He refers, to establish this, to *Hubbard* v. *Briggs* (31 N. Y., 518); *Stephens* v. *The People* (19 id., 549); *Newcomb* v. *Griswold* (24 id., 298). In the first case (*Hubbard* v. *Briggs*) the testimony of a deceased witness was read by stipulation ; and it was then proposed to read a deposition made by him in another action to contradict his testimony. This court held this to be incompetent, because the attention of the witness had not been called to the statements proposed to be read. The manifest distinction between that case and this is, that in this case the attention of the witness was called to the deposition proposed to be read ; he knew its contents, and had, or would have, every opportunity for explanation, while, in that case, the attention of the witness was not called to the paper at all ; and no opportunity was or could

be afforded him for explanation. The point determined here was not up in that case. The proper time for explanation is after the paper has been read; and that, as we have seen, is when the party proposing to offer it can introduce evidence on his part, and the attention of the witness is sufficiently called to it in the first instance by showing it to him, and giving him an opportunity to know what it is, and his admitting or denying its authenticity. These points were not in the case nor discussed. In *Stephens* v. *The People* (19 N. Y., 549) the court below had permitted such parts of the deposition taken before the coroner of two witnesses to be read as had been called to their attention during their examination, and rejected the other parts. The court held that this was not error; but if it was, it was cured by the subsequent introduction of the whole deposition; and it was also held, that the introduction of the deposition of another witness was not error, as there was no objection made that the attention of the witness was not called to it.

It cannot be claimed that the court intended to decide that the attention of the witness would not be sufficiently called to the paper by what took place in this case. No such point was presented, and the language of the court must be referred to the facts of the case. In *Newcomb* v. *Griswold* it was merely held that a witness is not bound to answer as to matters reduced to writing by himself or another, and subscribed by him, until after the writing has been produced and read, or shown to him. The supposed conflict between the authorities is attributable more to the apparent difference of expression than to a deliberate intent to change the rule. In neither case does the court discuss the rule above alluded to, or cite any authorities, or intimate an intention to change or modify the rule laid down in the elementary books. The result of all the authorities is that it is sufficient for a party, proposing to impeach a witness by proving inconsistent written statements, to show him or read to him the paper, and, if its genuineness is admitted, to introduce it, when he has a right to put in evidence; and that it is not the legal right of

the other party or the witness to enter into any explanation of the contents of the paper until after it has been introduced in evidence. The court may doubtless permit the explanation in the first instance, and may vary the order of proof in this as in many other cases for the purpose of eliciting truth and preventing injustice. Many questions of this character are within the discretion of the court; but here the plaintiff pursued the usual and legal course. The witness admitted the genuineness of the paper and knew its contents. His attention was sufficiently called to it. Neither he nor the defendant asked the privilege of explanation, nor demanded the reading of the paper. The plaintiff offered the paper at the right time, and it was error to reject it. The court not only refused to permit the introduction of the paper on the ground that no foundation had been laid, but, after the plaintiff had recalled the witness for the purpose of laying the foundation, refused to permit the necessary questions to be put to him, on the ground that it was discretionary with the court to allow a witness to be recalled. Whether such an exercise of discretionary power against a party is not legal error it is not requisite to determine, as the recall of the witness was unnecessary.

The deposition offered in evidence is not before us, and we cannot, therefore, say that the plaintiff might not have been prejudiced by its rejection. The result may have been the same ; but as there is no legal rule by which we can so determine for the error in rejecting it, the judgment must be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.