### ROOT *v.* BORST.

*(Supreme Court, General Term, Fourth Department.* September, 1892.)

**1. LITERARY PROPERTY—EVIDENCE—NOTES USED IN PREPARATION.**
  In an action to determine which of two persons at an observatory had the right of property in a star catalogue compiled by them, it appeared that plaintiff had been asked by defendant to write a preface for the catalogue, but that the latter had not claimed the work as his own, and that plaintiff had previously thereto made certain notes to be used in the preparation of the said preface. *Held*, that the admission of such notes was not improper, although defendant may never have seen or known of them. MARTIN, J., dissenting.

**2. SAME—CORRESPONDENCE.**
  A witness for defendant stated on cross-examination that he had had some correspondence with plaintiff, and that he was under the impression the catalogue belonged to plaintiff. Afterwards plaintiff, being on the stand, offered the correspondence for the purpose of showing said witness' understanding as to whose the catalogue was, and testing also his credibility or the accuracy of his memory. The genuineness of the correspondence was not denied. *Held* admissible, although witness' attention may not have been called thereto when upon the stand. MARTIN, J., dissenting.

**3. SAME.**
  Letters written by a person in charge of another observatory, to whom application had been made for the loan of certain books, were admissible to show whether the application was by plaintiff or defendant, and to whom the books were actually sent. MARTIN, J., dissenting.

Appeal from circuit court, Oneida county.

Replevin by Christian H. F. Peters against Charles A. Borst for the wrongful taking and detention of certain property. There was judgment entered on a decision of the court without a jury in favor of plaintiff, after which

plaintiff died, and Edwin R. Root was appointed administrator. Defendant appeals. Affirmed.

For former report, see 9 N. Y. Supp. 789.

Plaintiff in his complaint alleged that, on or before the 17th day of December, 1887, at Clinton, the defendant "wrongfully took, and wrongfully detains from the said plaintiff," the property described in the complaint; and the complaint alleged that the plaintiff demanded a return of said property, and that the defendant refused to return and surrender the possession of the said property. In the complaint the property is described as follows, viz.: "(1) A book (in quarto) forming volume 2 of Dr. Peters' Collection of Star Positions. The book contains also additions of J. G. Porter's hand, and a few of Mr. Borst's, and of about or over 8,000 positions. (2) A manuscript, consisting of about 300 sheets, (foolscap size, ruled and written closely on both sides.) The nucleus of this MS. is a copy from volumes 1 and 2 of the above-mentioned collection, but compiled in order of right ascension of the stars. It is in two parts, the first series of the stars being for the year 1850, and the second for the year 1875. Included in this compilation are also the star determinations, made with the equatorial of the Litchfield observatory, and it contains many notes of my hand. (3) A manuscript copy of the preceding (the sheets in large folio, written on both sides) made because the latter had become too overcrowded by the insertion of stars from other sources, formerly not considered. The following sheets will show incompleteness in several of the columns, especially in the first one. (4) Papers (in loose sheets, mostly in quarto) containing, in Dr. Peters' handwriting, abstracts, intended to be inserted in the foregoing MS., from the various Greenwich publications, from the Madras and from the Cape of Good Hope observations, etc., made by Dr. Peters."

The answer contained a denial of the allegations of the complaint, and it alleged that the "plaintiff is not and never was entitled to the possession thereof, or of any part thereof; and alleges that said defendant was, on and before the 17th day of December, 1887, ever since has been, and now is, the lawful owner thereof, and of each and every part thereof, and lawfully entitled to the possession thereof, and of each and every part thereof, with the exception of the chattel in folio 7 of said Schedule A attached to said complaint, described therein as follows, viz.: 'A book (in quarto) forming volume 2 of Dr. Peters' Collection of Star Positions;' * * * which said chattel defendant alleges belonged, on or before December 17, 1887, ever since has belonged, and now belongs, to the trustees of Hamilton College, at Clinton, N. Y., and was duly delivered by said trustees on or before December 17, 1887, to defendant, and into his possession; and defendant alleges that he ever since has been, and now is, lawfully entitled to the possession of such chattel; and defendant alleges that he retains and holds the same, and possession thereof, by virtue of authority from said trustees, and by virtue of a special property therein as aforesaid."

The court found as facts that the Litchfield observatory, situated at Clinton, and the astronomical instruments and apparatus therein and connected therewith, belonged to and were the property of Hamilton College, a corporation located at Clinton; that since the year 1858 Dr. Peters had been the director of said observatory, having been employed by Hamilton College at an annual salary paid to him by said Hamilton College; that the defendant, in 1881, graduated from the Hamilton College, and "went to the observatory as an assistant, and remained there as such assistant until about the 1st of January, 1888; that his salary for the first year was $500, and for the subsequent years $600 per year;" also "that the duty of the said defendant, as such assistant in the observatory, was to aid and assist the plaintiff in the work carried on at said observatory," and he remained in that position "until the trouble between the parties as to the 'Star Catalogue' began, about the

1st of January, 1888;" and also found that Dr. Peters, in 1850, while at Constantinople, and before he came to this country to reside, "first conceived the idea of making a 'Star Collection.' He then began to accumulate the material, using the book known in this case as 'Exhibit 1.' This book was used for this purpose before and after he came to this country, and became connected with Litchfield observatory, and down to the year 1862. This book then became substantially filled with materials, about 7,800 star positions having been entered therein." The court also found that the Exhibits 2, 4, 5, 6, and 8 are the chattels which are the subject of this action. The court also found "that the plaintiff regarded this catalogue all along as his own work; that he never consented to surrender it to the defendant; that he intended to give defendant full credit for all he did upon or with reference to it; that the defendant, as he became familiar with the work and learned how to manage its details, conceived the design of appropriating the whole work to himself, and depriving the plaintiff of all credit for or reputation growing out of it; that defendant, on or about the 17th day of December, in the year 1887, at Clinton, in the county of Oneida, wrongfully took and wrongfully detained from said plaintiff the articles of personal property known on the trial as ' Exhibits 2, 4, 5, 6, and 8;' that prior to the commencement of this action the plaintiff duly demanded of said defendant the return of said property, which return the said defendant has refused." The court also found "that the books and manuscripts known as 'Exhibits 2, 4, 5, 6, and 8' were, at the time of the commencement of this action, the property of the plaintiff, who was then and is now entitled to the possession thereof;" and the court found the value of them to be $2,260, and that the plaintiff had suffered six cents damages by reason of the unlawful detention of said property.

As conclusions of law, the court found as follows: "(1) That the books and manuscripts in question, and the work intended to be published as a ' Star Catalogue,' did not belong to the Litchfield observatory or to Hamilton College. (2) That the property in these books belonged to the plaintiff, and to him alone. (3) That the books and manuscripts known as ' Exhibits 2, 4, 5, 6, and 8' were at the time of the commencement of this action the property of the plaintiff. (4) That the plaintiff is entitled to recover from defendant the possession of the chattels known in the action as ' Exhibits 2, 4, 5, 6, and 8,' the value of which is hereby affixed at $2,260, with six cents damages, and the costs of this action."

The defendant seasonably filed exceptions to the findings of the court as to the facts and as to the law, and made several requests for additional findings, some of which were yielded to and some of which were refused. The trial was commenced January 31, 1889, and on the 1st day of February it was adjourned to the 7th day of February.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*William Kernan*, for appellant.  *E. D. Matthews, Elihu Root*, and *H. M. Love*, for respondent.

HARDIN, P. J.  1.  Upon carefully reading the evidence found in the appeal book, we see that there is a conflict in the evidence in respect to the paramount question involved in the issue between the parties. Plaintiff asserted upon the trial property in and ownership of the articles described in the complaint, and particularized in the evidence. Defendant, as a witness, contradicted the plaintiff in many respects, and called witnesses tending to substantiate the position taken by the defendant. On the other hand, the plaintiff as a witness, and with other witnesses more or less supporting his theory of the case, gave evidence tending to show an ownership of the property in question. The trial judge saw and heard the witnesses at great length. He had an opportunity to investigate their frankness, honesty, and intelligence and freedom from bias, or to discover their mistakes or coloring of circumstances

and events to favor the theory put forth by the party in whose interest the testimony was given. The trial judge "has made up his mind where the right and truth lies." We are not prepared, upon a careful inspection of the evidence, to interfere with his findings upon the conflicting evidence. See *Roosa* v. *Smith*, 17 Hun, 138; *Baird* v. *Mayor*, 96 N. Y. 567; *Lowery* v. *Erskine*, 113 N. Y. 52, 20 N. E. Rep. 588; *Murray* v. *Murray*, (Sup.) 16 N. Y. Supp. 363; *Moulton* v. *Cornish*, Id. 271.

2. After the defendant had rested the plaintiff was called to the stand, and testified that the defendant had asked him to write a preface; and he added; "He did not ask me to write the preface for him as a preface for his work. After the talk about making a preface, I did not commence the preparation of notes for making a preface. These written memoranda which I now produce I made during the progress of the work, which I intended to use in the preparation of the preface." The case then states, viz.: "A package of papers, being the memoranda in question, were here marked 'Exhibit No. 58,' and were offered in evidence by the counsel for the plaintiff. Counsel for the defendant objected to them as incompetent, and not evidence against the defendant. Court overruled the objection, and admitted the evidence, to which ruling and decision counsel for the defendant excepted. Papers were read in evidence, and may be produced by either party on argument of the case." The court said: "I receive this upon this theory which we have received more or less evidence of which Mr. Borst did, which, it is claimed, were brought to the knowledge of the plaintiff. For example, the memorandum which was made before,—the Exhibits 4 and 5. It is not claimed that the doctor saw that." The exhibit is not printed or found in the appeal book. The plaintiff was allowed to testify that he had made written memoranda preparatory to a preface without objection. No witness was called to contradict the plaintiff in that regard. We see nothing in the ruling prejudicial to the defendant.

3. During the cross-examination of Dr. Hall he was asked if he was present at a meeting of the National Academy of Science at Boston in November, 1886, and he testified that he was; and he also testified that the pamphlet produced was a correct record of the session, and that he was secretary. He was then asked, viz.: "*Question.* Were you present at that meeting when the following papers were read by Dr. Peters, (reading from pamphlet:) 'No. 13. Peters, C. H. F., catalogue of stars from positions in various astronomical periodicals?'" This question was objected to, and the objections were overruled, and the defendant excepted. The witness answered, "I was present." The defendant had testified that "Dr. Peters went to Boston in the fall of 1886." He also testified: "He went to the National Academy of Science, and gave a description of this catalogue, and did not tell me anything about it." It seems the defendant saw some notice in the Tribune, and held a conversation with Dr. Peters after he came back in respect to the "description of the catalogue" made at the meeting. We think the ruling made by the court was not erroneous.

4. The defendant testified that "Dr. Hall visited Dr. Peters at the observatory in August, 1885. Dr. Hall and myself had the conversation in the observatory. Dr. Peters was present." The defendant then details a conversation held with Dr. Hall, and adds again, viz.: "This conversation was in Dr. Peters' presence. He sat in the chair at the desk smoking his cigar, and looking out of the window." Dr. Hall was called by the defendant as a witness, and testified to the interview held with the defendant in August, 1885, at the Litchfield observatory, and he says: "There was only one occasion when we were examining the manuscript, and had a talk about it in the observatory. I know the doctor was about the observatory." The witness adds: "Not a word was said by Dr. Peters." When Dr. Peters was called to the stand he testified as follows: "I heard the defendant sworn, and heard his statement as to the conversation with Dr. Hall. I was not at that time,

or at any time, present, nor did I hear any such conversation. I was not' present at the conversation between him and Dr. Hall, which he gave. I remember when Dr. Hall visited Clinton, the year he refers to." In the course of the cross-examination of Dr. Hall, he mentioned, viz.: "I had a correspondence with him, [Dr. Peters.]" He also testified: "I have this impression, that Dr. Peters had collected the positions of stars, and I knew of it, and saw some memoranda of it." It seems that after Dr. Hall's testimony was given the cause was adjourned from the 1st of February to the 7th of February, and on the adjourned day, the plaintiff, being upon the stand, produced several letters received from Dr. Hall, dated in 1886, and offered to read them in evidence. They were objected to as not competent, and "that they were not shown to Prof. Hall, and his attention was not called to them when here as a witness on the last hearing." Thereupon plaintiff's counsel offered to read from the letters paragraphs which related to the catalogue. Plaintiff's counsel stated that the letters show Dr. Hall's understanding as to whose catalogue this was, and they show that he could not possibly have received an impression from any conversation that this was the defendant's catalogue. Thereupon the court said: "By way of cross-examination of Dr. Hall, I will receive them." The court overruled the objection, and admitted the letters in evidence, to which ruling and decision the counsel for the defendant excepted. (The letters were here read in evidence.) We think we should not disturb this decision on account of this ruling: *First.* The genuineness of the letters was not objected to by the defendant either at the trial or upon the argument before us. Apparently the letters were shown to the defendant when he was upon the stand as a witness, and he admitted the handwriting of Prof. Hall. The theory upon which the plaintiff produced Prof. Hall's letters was that they were inconsistent with his testimony, and were offered and received by the court for the purpose of impairing his credibility. In *Romertze* v. *Bank*, 49 N. Y. 581, Chief Judge CHURCH, after reviewing the authorities bearing upon the rule of evidence, observes: "The result of all the authorities is that it is sufficient for a party, proposing to impeach a witness by proving inconsistent written statements, to show him or read to him the paper, and, if its genuineness is admitted, to introduce it, when he has a right to put in evidence; and that it is not the legal right of the other party or the witness to enter into any explanation of the contents of the paper until after it has been introduced in evidence. The court may doubtless permit the explanation in the first instance, and may vary the order of proof in this as in many other cases for the purpose of eliciting truth and preventing injustice. Many questions of this character are within the discretion of the court." In that case it was held that "the plaintiff offered the paper at the right time, and it was error to reject it." In *Clapp* v. *Wilson*, 5 Denio, 285, it was held: "A party in a suit may give in evidence, to impeach the credit of a witness of his adversary, a written or sworn statement of such witness, made on another occasion, contradicting his testimony then given, without calling the attention of the witness to it otherwise than by giving it in evidence on the trial." If the defendant had asked for time or opportunity to produce the witness to explain the letters, doubtless it would have been error to have used the discretion in such a way as to deprive the defendant of Prof. Hall's explanation. Perhaps, however, we ought not to assume that he was not present. We think it appropriate to quote the language of DANFORTH, J., in *Neil* v. *Thorn*, 88 N. Y. 276, as applicable to the suggestion made by the counsel for the appellant: "If the defendants were prejudiced by the ruling, it was their duty so to present the case upon appeal that his absence and their inability to obtain him should be made apparent. A witness once summoned and called to testify upon a trial is presumed to be present until its conclusion. It is his duty to be in court, and, without consent of the opposite party or

permission of the court, he could not lawfully leave. Had it appeared that the witness left the court, and was not present when stated, it would have been in the discretion of the judge to suspend the trial until he could be again brought in. *Rapelye* v. *Prince*, 4 Hill, 119. If that was refused, the defendant might perhaps have had the benefit of an exception." It seems the object of showing a letter or document to a witness is to give him an opportunity to admit or deny its genuineness. It is apparent that the genuineness of Prof. Hall's letters was admitted at the trial, as no question was made there or is made before us as to the genuineness. *Second.* We think from the appeal book it is manifest that the plaintiff offered the letters of Prof. Hall for the purpose of bearing upon his credibility, or perhaps, more correctly speaking, the accuracy of his memory, and were intended to be received by the court for no other purpose. We are inclined to agree with the counsel for the appellant that "the letters do not contradict the testimony of the witness given in the trial" in any essential respect, and we think we should be warranted in saying that their admission was not prejudicial to the defendant.

5. During the examination of the parties it appeared an application had been made to Prof. Boss of the Dudley observatory for the loan of some astronomical books known as the "Volumes of the Nichtrichten." When Prof. Boss was upon the stand he testified: "I think Dr. Peters wrote to me in reference to the books." A question arose in the evidence whether the books were written for by the defendant or by Dr. Peters, and, as bearing upon that question, the letters of Prof. Boss were produced by the plaintiff, and, when an objection was made to their reception, the court observed: "The object of the letters is to show that the volumes were sent to the plaintiff." We think they were admissible as part of the *res gestæ* of the transaction, and that no prejudicial error was committed by the court in overruling the objection to the letters of Prof. Boss. Upon a careful examination of the appeal book, we have not found any "strong grounds to believe that the merits have not been fully and fairly passed upon" by the trial court, and we discover nothing in the case to indicate that a new trial would be more likely to result in a more just conclusion than the one reached at the circuit. *Hotchkiss* v. *Insurance Co.*, 5 Hun, 102. Our conclusion is that the decision made at the circuit should remain. Judgment affirmed, with costs.

MERWIN, J., concurs.

MARTIN, J., (*dissenting.*) On the trial the plaintiff was permitted to introduce in evidence memoranda which he had made to be used in the preparation of a preface to the catalogue which was the subject of litigation. This evidence was objected to as incompetent, and not evidence against the defendant. The court overruled the objection, and admitted the evidence, and the defendant excepted. The papers were then read in evidence, and were produced upon the argument of the case. It will be observed that these written memoranda were made by the plaintiff, had never been seen by the defendant, and were at most written statements made by the plaintiff in his own favor. I think the admission of this evidence was error. The plaintiff was also permitted to introduce three letters received by him from Prof. Boss, to show that certain books were sent to the plaintiff, and not to the defendant. These letters were objected to by the defendant, the objection overruled, and the defendant excepted. I think this exception was well taken. I am also of the opinion that the court erred in admitting in evidence the letters of Prof. Hall, which were objected to on the ground that they were not competent, and that they were not shown to Prof. Hall or his attention called to them when he was upon the witness stand. The correctness of the decision in this case is not sufficiently manifest to justify a disregard of these errors. For

these and other errors committed on the trial, to which special attention need not be given, I think the judgment should be reversed, and a new trial ordered.