(86 App. Div. 441.)

### HANLON v. EHRICH et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. EVIDENCE—WRITTEN STATEMENT OF ADVERSE WITNESS—ADMISSIBILITY

A written statement made out of court by a witness, prior to his testifying for one party touching the matters in issue, may be read in evidence by the adverse party, in presenting his case, as testimony in contradiction of the witness.

On motion for reargument and to resettle order. Motion for reargument denied, and to resettle order granted.

For former opinion, see 80 N. Y. Supp. 692.

Reargued before BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

JENKS, J.   The first motion is for reargument.   The opinion of the court is in 80 App. Div. 359, 80 N. Y. Supp. 692.   The learned counsel who moves does not show that Romertze v. East River National Bank, 49 N. Y. 577, has been overruled or disapproved.   But he seeks to discriminate it by showing that the question involved in this case was not passed upon.   And to this end he quotes from the opinion these words:

"The only question of law which seems to deserve attention relates to the attempt to prove that the witness Newell, called by the defendant, had made statements on another occasion inconsistent with those testified to by him on the trial."

But let us see what was attempted in making such proof, and what was the discussion of the court.   It appears in that case that the evidence of the witness Newell, called by the defendant, had been taken de bene esse, and that on cross-examination he had identified it. After the defendant rested, the plaintiff's counsel sought to read the deposition to show that the witness made therein statements inconsistent with his testimony.   The court excluded it, "on the ground, as we must presume" (the words are those of Church, C. J.), "that a proper foundation had not been laid."   The learned chief judge first says that, as the identification was sufficient, the court erred in rejecting the deposition, and then proceeds:

"What more should have been done?   It was not competent to repeat particular sentences and ask if he testified to them, because the paper was the best evidence of what it contained.   It was not incumbent upon the plaintiff's counsel to ask for explanations, nor to introduce the paper in evidence at that time.   If he desired to ask the witness questions with reference to it, the court might, in its discretion, permit its introduction at that time, but the regular course was to wait until his turn came to put in evidence, and this he did."

Again:

"The rule indicated preserves the orderly course of the trial, and does no injustice to the witness or either party, and such I understand to be the rule sanctioned by authority.   In 2 Greenleaf on Evidence, § 463, it is said that, if the witness 'admits the letter to be his writing, he cannot be asked whether statements such as the counsel may suggest are contained in it, but the whole letter must be read as the only competent evidence of that fact.   According to the ordinary rule of proceeding in such cases, the letter is to be read as the evidence of the cross-examining counsel in his turn, when he shall have opened the case.'   The same rule is laid down in 2 Phillips on Ev. 807."

Again:

"The result of all the authorities is that it is sufficient for a party, proposing to impeach a witness by proving inconsistent written statements, to show him or read to him the paper, and, if its genuineness is admitted, to introduce it, when he has a right to put in evidence; * * * but here the plaintiff pursued the usual and legal course.   * * *   The plaintiff offered the paper at the right time, and it was error to reject it."

The counsel in that case cited inter alia, The Queen's Case, 2 Brod. & Bing. 286.   I take it, then, that the Court of Appeals, in discussing

the procedure of the appellants, namely, their offer of the entire written examination as part of their case, decided that their course was entirely correct. Examination of the case below (2 Sweeny, 82, 90) shows that the court discussed the rule. Monell, J., said:

"The case mostly relied on by the appellant's counsel is certainly strongly in point. Clapp v. Wilson, 5 Denio, 285. The defendant produced a deposition of the witness, and inquired of him whether the name subscribed to it was his signature, and he admitted that it was. That was held sufficient proof to allow the deposition to be read for the purpose of contradicting the witness."

The court, however, concluded that Clapp v. Wilson, supra, had been overruled by decisions of the Court of Appeals. Now, turning to the opinion in Romertze's Case supra, we find that Chief Judge Church cited Clapp v. Wilson as an authority, and thereafter said:

"The learned judge who delivered the opinion of the court below claims that these authorities have been overruled, and the rule changed by this court. With great respect, I cannot agree with him."

The learned chief judge then proceeds to discriminate between the very cases cited by Monell, J., as overruling Clapp v. Wilson, supra. Clapp v. Wilson, then, stands approved and cited by the Court of Appeals in Romertze's Case. And in Clapp v. Wilson, the court, per Whittlesby, say:

"It was competent for the plaintiff to give in evidence the deposition of Carr before the master, for the purpose of impeaching him or impairing confidence in his testimony. To do this the deposition should be proved, and it was well enough proved by showing it to the witness and obtaining his admission that the signature to it was genuine. This proof would enable the plaintiff's counsel to read it whenever it was proper for him to make it evidence on his part, and the whole of it would then be evidence. 1 Phil. Ev. 296; The Queen's Case, 2 Brod. & Bing. 286."

But the learned and able counsel states that the question has been passed upon by authority in this state six times, and cites us thereto.

The first is Hobby v. Hobby, 64 Barb. 277. This was decided in 1869, upon the authority of Hubbard v. Briggs, 31 N. Y. 518, and Stephens v. The People, 19 N. Y. 549, of which both were the cases discussed in Romertze's Case, supra, as supposedly overruling Clapp v. Wilson, supra. The other New York case cited (Baptist Church v. Brooklyn Fire Ins. Co., 28 N. Y. 160) refers to oral statements, and the court merely uses it to draw an inference.

The second is Honstine v. O'Donnell, 5 Hun, 472. The court, per Gilbert, J., say:

"The only question in such cases is, whether the party is not required to put the whole paper in evidence. It was held by the English judges, in The Queen's Case, that he was, and that rule has been generally followed."

The learned judge then proceeds to say that that rule would seem to be open to the objection, which has been held good in relation to verbal conversations in Rouse v. Whited, 25 N. Y. 170, 82 Am. Dec. 337. But he concludes that no objection was taken, and that it is not plain that any part of it should have been suppressed under a rule like that laid down in Rouse v. Whited, supra, of which case I shall speak at a later time.

The third is Hine v. Cushing, 53 Hun, 519, 6 N. Y. Supp. 850. The quotation made is from the dissenting opinion, as the majority of the court held contra, inasmuch as the referee limited the scope of the writing to the showing of inconsistent statements.

The fourth is Saranac & Lake Placid R. R. Co. v. Arnold, 41 App. Div. 482, 58 N. Y. Supp. 710. This dealt with the admission of a railroad commissioners' report of 27 pages, and the court confined its decision to a paper of that kind. This case was reversed in 167 N. Y. 368, 60 N. E. 647, though it is true that point was not passed upon.

The fifth is Sturm v. Williams, 6 Jones & S. 325. The question arose upon the admission of a pamphlet or book, on a general topic, of which the witness was the author, and Rouse v. Whited, supra, is the only authority cited.

The sixth is Lace v. Carmichael, 1 City H. Rec. 33. This presents the ruling, during a trial, of the New York General Sessions in 1816, Radcliff, Mayor, presiding. I do not quite agree with the learned counsel that this is stated to be the New York rule in Cowen & Hill's notes to Phillips on Evidence. The long note, which names many authorities, simply states that such case holds that proposition. At least it so appears at page 976 (4th Am. Ed. 1859).

The learned counsel quotes a sentence from Gaffney v. People, 50 N. Y. 416, which, he insists, "intimates" that part of a written statement may be objectionable. It is worth noting that in that very case is an authority contra. In Rouse v. Whited, supra, which is cited by the learned counsel as "repudiating" The Queen's Case, and which is cited in two of the "six cases" as the decisive authority, it is said that the rule in The Queen's Case is adopted by Greenleaf and by Starkie, though the court prefers the limitation of the rule expressed in Prince v. Samo, 7 Adol. & Ellis, 627. But the statements under discussion in Rouse v. Whited were oral, as they were in Prince v. Samo. The court, in Rouse v. Whited, also notices that in Forrest v. Forrest, 6 Duer, 102, the rule in Prince v. Samo was not applicable to written evidence, and finally adopts the rule of Prince v. Samo, "at least so far as it applies to the conversation of a party to the suit." Page 177, 25 N. Y.

Sir James Stephen, in article 132, lays down the rule that a witness may be questioned as to previous statements made by him in writing, or reduced to writing, relative to the subject-matter of the cause, without such writing being shown to him (or being proved in the first instance); but, if it is intended to contradict him by the writing, his attention must, before such contradictory proof can be given, be called to those parts of the writing which are to be used for the purpose of contradicting him. Professor Chase, the learned and accurate editor of Stephen's Digest on Evidence, in his note to article 132, writes:

"The statutory rule of this article is not followed in this country, but the former English rule laid down in The Queen's Case, 2 Brod. & Bing. 286. When it is sought on cross-examination to impeach an adversary's witness by inconsistent statements previously made by such witness in writing, as in a letter, affidavit, or other written instrument, the witness should not be asked whether in such letter (or other writing) he made certain statements which counsel suggests, but the proper practice is to first exhibit the writing

to him and ask him if he wrote it or signed it. If he assents, the writing should itself be read in evidence as the best evidence of its contents, and before examining the witness in reference to its statements. The court may in its discretion permit it to be put in evidence when the witness admits it to be his writing, if cross-examining counsel wishes then to question in regard to its contents; but the regular time for introducing it is when said counsel develops his own side of the case. After the paper has been given in evidence, due opportunity is afforded to the witness to explain the alleged inconsistency"—citing many authorities, among them Romertze v. East River Bank, supra, and Gaffney v. People, supra.

I think that the three cases cited by the learned counsel in his supplemental point (Suffolk County v. Shaw, 21 App. Div. 146, 47 N. Y. Supp. 349; Taft v. Little, 78 App. Div. 74, 79 N. Y. Supp. 507; and Matter of Chamberlain, 140 N. Y. 390, 35 N. E. 602, 37 Am. St. Rep. 568) do not apply. Suffolk County v. Shaw, supra, holds that it was error to permit the defendant to prove his case by his own declarations contained in his own testimony on a previous trial, when the plaintiff had read part of that testimony in evidence. Taft v. Little, supra, held that it was error to exclude parts of the testimony of a witness on a former hearing, provided they were explanatory. Matter of Chamberlain, supra, holds that the executrix could not read in evidence all of her own testimony taken in a distinct proceeding, but only such parts as met the evidence offered by the contestant.

The learned counsel insists that the point in this case is "whether the court erred in permitting the counsel to read only those statements that contradicted the witness." Not so. The question is whether the court erred when it would not permit the defendants to offer the written statements in contradiction as part of their case. I tried to make that clear in my opinion. I then said:

"As the defendants were entitled to read the entire written statements in evidence, the burden is upon the plaintiff to show that the exclusion worked no harm. But the written statements excluded are not in the record, and hence, in the language of Church, C. J., in Romertze's Case, supra, 'We cannot, therefore, say that the plaintiff might not have been prejudiced by its rejection.'"

A reading of the Queen's Case, supra (p. 288 et seq.), will show the application thereof to the question presented in this appeal. I am of opinion that the defendants were entitled, in presenting their case to the jury, to read in evidence written statements touching the accident, made by persons subsequently called by the plaintiff as her witnesses on the trial of a case based upon the accident, as evidence in contradiction of those witnesses. The Queen's Case, 2 Brod. & Bing. 284, 288; Clapp v. Wilson, 5 Denio, 285; Romertze v. East River Nat. Bank, 49 N. Y. 577; Gaffney v. People, 50 N. Y. 416, 423, 424; The People v. McCrancy, 6 Parker, Cr. R. 49, 104, 105; Root v. Borst (Sup.) 20 N. Y. Supp. 189, 193; Chase's note to Stephen's Digest of the Law of Evidence, art. 132, p. 332; Hosmer v. Groat, 143 Mass. 16, 8 N. E. 431; Chicago R. Co. v. McLaughlin, 146 Ill. 353, 361, 34 N. E. 796.

The motion for reargument should be denied. The motion to resettle the order should be granted. All concur.